Daniel Wright, Esq. Wright Baker, P.A.
130-C North College Fayetteville, Arkansas 72701
Dear Mr. Wright:
You have requested approval, pursuant to the Interlocal Cooperation Act, A.C.A. § 25-20-101 et seq.
(Repl. 2002 and Supp. 2009) (the "Act"), of a proposed agreement between the City of Greenland, Arkansas and the City of West Fork, Arkansas, captioned "Interlocal Mutual Aid Agreement" (the "Agreement"). You have submitted a copy of the Agreement, under the terms of which the parties agree to cooperate through their respective certified law enforcement agents in the enforcement of the law in their respective jurisdictions. I am required to review the Agreement for the purpose of determining whether it is in proper form and otherwise compatible with Arkansas law. A.C.A. § 25-20-104(f)(1) (Supp. 2009).
As I recently noted in Op. Att'y Gen. 2010-046, in which I declined to approve a previous version of your submission, the Act authorizes agreements for joint or cooperative action between or among "public agencies" — a term statutorily defined as including any "[p]olitical subdivision of this state." A.C.A. § 25-20-103(1)(B) (Supp. 2009). With respect to the range of permissible agreements under the Act, A.C.A. § 25-20-104(a) (Supp. 2009) provides in pertinent part:
 Any governmental powers, privileges, or authority exercised or capable of exercise by a public agency of this state alone may be exercised and enjoyed jointly with any other public agency of this state which has the same powers, privileges, or authority under the law. . . . *Page 2 
(Emphasis added.) In my opinion, this grant of authority would include an agreement between two political subdivisions such as Greenwood and West Fork to cooperate in law enforcement.
With respect to the formal requirements specified by law, A.C.A. § 25-20-104 (Supp. 2009) provides in pertinent part:
 (c) Any agreement for joint or cooperative action shall specify the following:
 (1) Its duration;
 (2) The precise organization, composition, and nature of any separate legal or administrative entity created thereby, together with the powers delegated to it, provided that the entity may be legally created;
 (3) Its purposes;
 (4) The manner of financing the joint or cooperative undertaking and of establishing and maintaining a budget therefor;
 (5) The permissible methods to be employed in accomplishing the partial or complete termination of the agreement and for disposing of property upon the partial or complete termination; and
 (6) Any other necessary and proper matters.
 (d) In the event that the agreement does not establish a separate legal entity to conduct the joint or cooperative undertaking, in addition to the items enumerated in subdivisions (c)(1) and (c)(3)-(6) of this section, the agreement shall contain the following:
 (1) Provisions for an administrator or a joint board responsible for administering the joint or cooperative undertaking. In the case of a joint board, public *Page 3 
agencies party to the agreement shall be represented; and
 (2) The manner of acquiring, holding, and disposing of real and personal property used in the joint or cooperative undertaking.
Having reviewed the Agreement, I have concluded that it now meets the formal requirements set forth above. I will therefore certify the Agreement as formally in compliance with the Act and with applicable state law, subject only to my previously expressed condition that each of the police departments at issue proceed under a written policy on file "regulating the actions of its employees relevant to law enforcement activities outside its jurisdiction." A.C.A. §§ 16-81-106(c)(3) and-106(c)(4) (Supp. 2009).
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM:JHD/cyh *Page 1